UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BENJILEI M.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

NO:  1:18-CV-3220-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary

judgment (ECF Nos. 10, 15).  D. James Tree represents Plaintiff.  Christopher J.

Brackett represents the Commissioner of Social Security Administration.  The

Court has reviewed the administrative record and the parties' completed briefing,

and is fully informed.  For the reasons discussed below, the Court grants

Defendant's motion and denies Plaintiff's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation

omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe, or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (*citing Tackett*, 180 F.3d at 1099).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits on September 26, 2011 with an amended onset date of December 31, 2007. Tr. 907. Her application was denied initially and on reconsideration. Tr. 907. After holding a hearing, the administrative law judge ("ALJ") issued a decision on November 22, 2013 finding Plaintiff was not disabled. Tr. 907. The Appeals Council upheld the decision and the claimant sought relief in the United States District Courts. Tr. 907. The District Court ultimately remanded for further proceedings based on its finding that the ALJ failed to sufficiently consider Plaintiff's alleged impairment to her left ankle. Tr. 907; Tr. 1019-20. Pursuant to the remand order, the ALJ held a hearing on April 30, 2018. Tr. 907. On September 10, 2018, the ALJ issued its final decision denying Plaintiff's application. Tr. 928.

At step one, the ALJ found Plaintiff last met the insured status requirements on June 30, 2012 and determined that Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of December 31, 2007 through her date last insured of June 30, 2012. Tr. 910. At step two, the ALJ found that Plaintiff had the following severe impairments:

> degenerative changes of the lumbar spine, degenerative changes of the cervical spine; status-post left ankle surgery in May 2004 and August 2004;

obesity; anxiety-related disorder (with features of panic and PTSD); and depressive disorder (20 CFR 404.1520(c)).

Tr. 910. At step three, the ALJ determined that the claimant does not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 911.

The ALJ then determined that the Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b):

The claimant could not operate foot controls. The claimant could occasionally balance, stoop, kneel, and crouch. The claimant could not climb ladders, ropes, scaffolds, ramps, or stairs. The claimant could not crawl. The claimant needed to avoid concentrated exposure to vibrations and hazards.

The claimant could perform simple, routine tasks and follow short, simple instructions. The claimant could do work that needs little or no judgment and could perform simple duties that could be learned on-the-job in a short period.

The claimant required a work environment that is predictable and with infrequent work setting changes.

The claimant required a work environment with minimal supervisor contact (Minimal contact does not preclude all contact; rather, it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor).

The claimant could work in proximity to coworkers, but not in a cooperative or team effort. The claimant required a work environment that has no more than superficial interactions with coworkers.

The claimant could not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of

the work process.  Incidental contact of a superficial nature with the general public is not precluded.

Tr. 913.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work through the date of last insured of June 30, 2012.  Tr. 926.  However, the ALJ found that there were jobs that existed in significant numbers in the national economy that the claimant could have performed.  Tr. 926.  The ALJ accordingly found Plaintiff was not under a disability at any time from December 31, 2007 (the alleged onset date) through June 30, 2012 (the date last insured) and denied Plaintiff's application for benefits.  Tr. 927.  Plaintiff now appeals to this Court.

## ISSUES

Plaintiff seeks judicial review of the ALJ's final decision denying her disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises three issues for review:

1. Whether the ALJ erred by finding PTSD and personality disorders were not medically determinable at step two;

2. Whether the ALJ erred in assessing the medical opinions; and

3. Whether the ALJ erred in rejecting Plaintiff's subjective complaints.

ECF No. 10 at 2.  The Court evaluates each issue in turn.

**DISCUSSION**

A. **Step Two Analysis**

Plaintiff argues the ALJ erred in finding Plaintiff's PTSD and personality

disorders are not medically determinable, at step two. ECF No. 10 at 3. Plaintiff

points to several opinions that purportedly suggest she had PTSD and a personality

disorder. ECF No. 10 at 3-5.

A claimant bears the burden at step two to demonstrate that she has

medically determinable physical impairments which (1) have lasted or are

expected to last for a continuous twelve-month period and (2) significantly limits

her ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii),

404.1520(c), 404.1509. An impairment does not limit an ability to do basic work

activities where it *"would have no more than a minimal effect on an individual's*

*ability to work."* *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (emphasis in

original) (quoting SSR 85-28). A step two finding of a severe impairment does not

itself result in a finding of disability. Rather, the step-two analysis is "a *de*

*minimus* screening device to dispose of groundless claims." *Smolen v. Chater*, 80

F.3d 1273, 1290 (9th Cir. 1996). *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th

Cir. 1996) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)).

Importantly, if the ALJ finds the claimant has a medically determinable

impairment that significantly limits the claimant's ability to do basic work

activities, the ALJ proceeds to the following steps where the ALJ must consider <u>all</u> of the claimant's limitations, regardless of the label. Accordingly, the failure to identify additional impairments at this step is, by definition, harmless. In such circumstances, the claimant must demonstrate that the ALJ committed some harmful error in assessing the limitations going forward (*e.g.*, the assigned RFC), which can be related to observations made at step two.

### 1. **PTSD**

At step two, the ALJ determined that the claimant had the severe impairment of "anxiety-related disorder (with features of panic and PTSD)". Tr. 910. The ALJ noted that the District Court did not disturb the ALJ's finding that Plaintiff's PTSD was not medically determinable and adopted this prior analysis. Tr. 910. Despite this, the ALJ "considered the claimant's PTSD symptoms in the context of her anxiety disorder." Tr. 910.

In the previous opinion, the ALJ determined that, (1) "[a]lthough at least one evaluating psychiatrist suggested a diagnoses of PTSD (*see e.g.* 13F21-22), [another] evaluating psychiatrist specifically reject[ed] that diagnosis indicating the claimant had specifically denied symptoms of PTSD and that her treating records did not support such a diagnoses" and that (2) while "treating psychiatrist C. Donald Williams suggested a diagnoses of PTSD through July 2012 (19F, 27F27-28), in August of that year he abruptly dropped that diagnoses" and "[d]uring the

next year of treatment, through August 2013, Dr. Williams did not again suggest a diagnoses of PTSD (26F7-25)." Tr. 20-21.

Plaintiff argues the ALJ "mischaracterizes the impairment", ECF No. 10 at 3, but the characterization is not material after step two as long as the limitations are considered; the ALJ specifically stated that he "considered the claimant's PTSD symptoms in the context of her anxiety disorder." Tr. 910. Plaintiff also complains that the ALJ "gave less weight to providers who assessed her PTSD (Tr. 923, 924)", ECF No. 10 at 3-4, but she does not explain how this was harmful error given the ALJ provided numerous other reasons for discounting the medical opinions, as discussed below. Moreover, the ALJ cites to the opinion of Dr. Schneider, who specifically noted that "[t]here was no mention of any trauma connected with the assaults at work, and there were particularly no references to any nightmares, flashbacks, intrusive memories of the assault, hypervigilance or any other indication that she has been psychologically traumatized by the assault" and otherwise stated that "[t]here was no indication that she was a traumatized woman", among other similar observations. Tr. 673. The ALJ reasonably relied on the opinion of Dr. Schneider.

Importantly, Plaintiff points to opinions that assessed PTSD, ECF No. 10 at 4, but she does not explain how the ALJ's reliance on the opinion of Dr. Schneider was unreasonable. Moreover, Plaintiff does not identify how the RFC, which

included significant limitations on contact with others, does not incorporate the alleged limitations from PTSD.

In any event, the ALJ is correct that the remand order did not require the ALJ to review the step two determination other than for Plaintiff's left ankle.

### 2. **Personality Disorder**

The ALJ found Plaintiff's alleged personality disorder was not medically determinable because "Dr. Early concluded that, based on the MCMI-III results, the claimant did not have a personality disorder (13F17)." Tr. 911. Plaintiff argues the ALJ "failed to give an adequate reason for finding [Plaintiff] did not have a personality disorder." ECF No. 10 at 4 (citing Tr. 911). However, the ALJ cited to Dr. Early, who opined that Plaintiff's "profile was not consistent with any personality disorder." Tr. 911; *see* Tr. 660. Plaintiff points to conflicting opinions, ECF No. 10 at 4, but her argument amounts to a difference of opinion with the ALJ (she does not argue the ALJ's decision was unreasonable), and her argument is better aimed at the weight given to the relevant opinions. Moreover, Defendant dispels Plaintiff's contention that the noted opinions support her position. *See* ECF No. 16 at 5.

In any event, as above, the ALJ is correct that the remand order did not require the ALJ to review the step two determination other than for Plaintiff's left ankle.

### B. **Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13. That said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes*, 881 F.2d at 755 (stating that the Court may draw reasonable inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

Plaintiff takes issue with the ALJ's decision to not adopt the disabling limitations opined by Dr. Gomez, Dr. Thysell, Dr. Tolivar, and Ms. Hemp. ECF No. 10 at 6-14. These opinions were all contradicted by other medical opinions,

*see* Tr. 921, so the ALJ need only provide a specific and legitimate reason for discounting the opinions of Dr. Gomez, Dr. Thysell, and Dr. Toliver. Ms. Hemp is an "other source", so the ALJ need only provide a germane reason to discount her opinion. Plaintiff also takes issue with the ALJ giving significant weight to Dr. Williams. ECF No. 10 at 14-15.

1. **Dr. Gomez, Dr. Thysell, Dr. Toliver, and Ms. Hemp.**

The Court finds that the ALJ made a reasonable determination that the disabling limitations opined by Gomez, Thysell, Toliver, and Hemp were not consistent with the objective medical findings. The ALJ explained that, despite the allegedly disabling limitations posed in their opinions:

> The claimant generally had only mild findings on imaging studies of the lumbar and cervical spine. EMGs of the upper extremities were negative and EMGs of the lower extremities were unremarkable except for mild findings in the left leg. While the claimant was obese, she did not have any secondary complications due to her weight, such as heart disease, pulmonary dysfunction, or diabetes. With regard to her history of left ankle surgeries, it did not prevent her from being able to work with the condition and it was not the cause for why she stopped working.

Tr. 922. Plaintiff does not demonstrate this was an unreasonable conclusion.

Plaintiff argues the "ALJ's finding of allegedly 'minimal' objective findings also fails to include many positive findings in this record." ECF No. 10 at 7. However, Plaintiff does not cite to the record, so it is unclear what she is referring to, and a search for the term "minimal" within the ALJ's opinion does not clarify

the matter.  *See* Tr. 915 (ALJ noting an MRI showed only "minimal spondylosis in the cervical spine") Tr. 921 (ALJ noting Plaintiff received "minimal treatment for the left ankle"); Tr. 923 (ALJ noting Dr. Toliver's chart notes reveal minimal to no objective findings during appointments).  In any event, Plaintiff cites to "diminished" strength and reflexes, reduced range of motion, decreased sensation, antalgic giant, and other "mild", "minimal", and "slight" findings along with "significant stenosis" and "moderate degeneration", but these only support the ALJ's reasonable determination that these relatively unremarkable objective findings are inconsistent with the disabling limitations posed by Gomez, Thysell, Toliver, and Hemp.

The ALJ also reasonably determined that Dr. Thysell's own reports that Plaintiff had *mild* impairments, even if based on differing standards, was inconsistent with his opinion that Plaintiff was unemployable.  *See* Tr. 922. Similarly, the ALJ reasonably determined that Hemp's opinion is not fully reliable given the various inconsistencies during testing.  Tr. 923; *see* Tr. 919 (ALJ documenting Ms. Hemp's own notes regarding the incongruence between Plaintiff's subjective complaints of pain and what was expected on the functional pain scales, Plaintiff's subjective reports of pain levels not matching her action, and Plaintiff's lack of effort, among other things).

Moreover, the ALJ also reasonably determine that the opinions of Hemp, Gomez, and Toliver are inconsistent with Plaintiff's ability to drive and travel via plane regularly out of the state and out of the country, noting that "[i]t seems somewhat inconceivable that someone who needs to lie down frequently or who cannot sit for any length of time would have any ability to engage in such activities." Tr. 922. While Plaintiff highlights her need for help during traveling, the ALJ's determination that the ability to so travel is inconsistent with the posed limitation is reasonable considering the realities of what is required to travel internationally, among other things.

Finally, Plaintiff asserts the "ALJ relies on a misstatement of the record", arguing that, despite the ALJ's determination that there were "no complaints or workup for her left ankle from December 2007 to June 2012", Plaintiff "was assessed several more times, including in IMES (Tr. 494-95, 521)"; "she complained of ankle pains and limitations getting to the bathroom without a crutch in May 2011 (Tr. 743)"; and "she made ongoing complaints regarding her legs particularly on the left (*e.g.* Tr. 696, 761)." ECF No. 10 at 7. The latter argument is patently unavailing—complaints about her leg are not complaints about her ankle.

Tr. 494-495 is a record from an exam performed on September 17, 2009 by Dr. Haynes and Dr. Kopp. In the report, the doctors note that Plaintiff "indicates

that she experiences sharp stabbing pain and numbness in her left ankle." Tr. 495. The doctors further note that "[m]otor examination of the lower extremities reveals a give-way quality to the effort in ankle dorsiflexion and inversion, and in fact in all major muscle groups" and that "the examination [was] characterized by give-way weakness, mostly on the left side, with a very major discrepancy noted between seated and supine straight leg raising, at 75 versus less than 10, with a general air of caution and guarding." Tr. 503-504. At the end of the report, the doctors "declined to make recommendations regarding the claimants work ability and have declined to fill out a Doctor's estimate of Physical Capacities form because of the claimant's inconsistent findings on examination." Tr. 505.

Tr. 521 is a report of an examination performed on June 23, 2008 stating that Plaintiff complained of "[s]tabbing and burning sensations in the left ankle" and that "[s]he has pins and needles sensations stating that her whole foot goes numb, including the toes." Tr. 520-21. At the end of the report, Dr. Lichter and Dr. Hall opined that Plaintiff "certainly is capable of gainful employment eight hours a day." Tr. 533.

Tr, 743 is a psychiatrist report dated May 2011 that mentions Plaintiff told the psychiatrist that, despite her "objective history of ankle injury", staff at the Rehabilitation Institute of Washington allegedly told Plaintiff that if she fell "it was psychological" and that she could not use a crutch. Tr. 743. While Plaintiff

states she "complained of ankle pains and limitations getting to the bathroom without a crutch in May 2011", this was merely a rendition of what had happened in the past, without any indication of when that happened.

The Court finds that these records do not demonstrate the ALJ committed harmful error, especially in light of the ultimate conclusions to decline to estimate Plaintiff's work ability in light of the inconsistencies, Tr. 505, and that she could perform work, Tr. 533. Moreover, Plaintiff has not attempted to explain how the records demonstrate the ALJ committed harmful error, and it is her burden to bear. *See* ECF No. 10 at 7-8. Indeed, the dearth of additional records supporting Plaintiff's position is telling. Notably, the ALJ elsewhere stated that Plaintiff "had some positive left ankle findings at times on examinations from December 2007 through June 2012" and specifically found that the "record lacks objective evidence that the claimant's left ankle substantially worsened after her assault in March 2005." Tr. 915. This is important because, as the ALJ noted, "[w]hile the claimant may have had some residual symptoms from her history of a left ankle injury, her condition did not prevent her from subsequently returning to substantial gainful activity in a medium exertional job" and "[t]his job eventually ended for physical reasons unrelated to the left ankle." Tr. 916.

The ALJ did not err as the ALJ provided ample legitimate reasons to discount these opinions and such is based on substantial evidence.

## 2. **Dr. Williams**

The ALJ reasonably accorded the opinion of Dr. Williams significant weight. Plaintiff complains that Williams "made findings in 2013, almost a year after the DLI" and that "[t]his matters because he specifically stated [Plaintiff] had 'improved in terms of mental health condition over the past several months.'" ECF No. 10 at 14 (citing Tr. 766). However, as Defendants correctly argue, "Dr. Williams chronicled [Plaintiff's] improvement over the course of 2011 and into 2012, prior to the June 2012 expiration of her insurance coverage[.]" ECF No. 15 at 8 (citing Tr. 917). Indeed the ALJ specifically stated:

> The claimant's allegations, however, are out of proportion to evidence indicating that she was responding to treatment. For example, in August 2011, she reported that Prazosin was helping to prevent nightmares (19Fl2), and treatment notes from Dr. Williams indicate that her medications were effective in treating her anxiety (See e.g., 19F2, 22; 26F32-33). Additionally, Dr. Williams assigned the claimant a GAF scores [sic] in the 40s when he first started seeing her in May 2011 (11Fl6-18). Dr. Williams assigned her GAF scores in the 60s from August 2011 through March 2012 (See e.g., 19F2, 4, 6, 8, 10, 12, 14, 16; 26F31, 33), which is further indication that she was doing well with counseling and medications. While her GAF score dropped to 45 to 55 in May 2012 (i.e., right before the date last insured), this was because she was dealing with the recent death of her father (26F30).

Tr. 917. Plaintiff has thus failed to demonstrate harmful error.

## C. **Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons not to fully credit Plaintiff's testimony. ECF No. 10 at 15.

This is far from the case.

In social security proceedings, a claimant must prove the existence of a physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 404.1508, 404.1527. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 404.1527. Once an impairment has been proven to exist, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* at 345. This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is unreliable, so long as the ALJ makes "a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion."). If there is no

evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 671-72 (9th Cir. 2012) (quotation and citation omitted). That is, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208.

Here, there is evidence of symptom magnification. Specifically, the ALJ identified several medical opinions that included observations that "[s]he had positive Waddell signs" in 2007 and 2009; "[a]lthough straight leg raising was negative to 90 degrees in the seated position, it was dramatically positive in the supine position at 20 degress"; Plaintiff "exhibited poor effort with attempted strength monitoring" and her "heart rate analysis did not show results of high effort, and that [she] might be able to do more physically than she demonstrated during her testing"; reports that she exhibited "give-way weakness . . . with a major discrepancy noted between seated and supine straight leg raising"; notes that Plaintiff's "subjective complaints of pain did not match what was expected on the functional pain scales, that her subjective reports of pain levels did not match her actions of lying down"; and that "she endorsed sensory deficits on examination [but] her sensory deficits did not correspond to any dermatomal pattern." Tr. 919-920. The ALJ also reasonably concluded her complaints of disabling limitations

are not consistent with her ability to travel frequently and that her allegation that she needs to use crutches on a regular basis is not consistent with her ability to "participate routinely in gait testing, without an assistive device[.]" Tr. 918-920.

In light of the evidence of symptom magnification and the ALJ's reasonable determination that her activities were inconsistent with her reports, *inter alia* (see Tr. 916-921 documenting inconsistencies between Plaintiff's allegations and the treatment record), the Court finds the ALJ did not err in discounting Plaintiff's subjective complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("lack of cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations" supported ALJ's credibility determination).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**.

The District Court Executive is directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** September 16, 2019.



THOMAS O. RICE
Chief United States District Judge